UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLAVANIA

| | |
|---|---|
| RANDY L. DAVIS, JR., Plaintiff, v. VALLEY FORGE MILITARY ACADEMY AND COLLEGE Defendant. | NO. 2:23-CV-02004 |

***COMPLAINT AND JURY DEMAND***

1. Plaintiff, Randy L. Davis, Jr. is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 504 Lantern Avenue, Philadelphia, Pennsylvania 19128.

2. Defendant, Valley Forge Military Academy and College ("College"), founded in 1928, is a private integrated military and academic educational and leadership institution comprised of middle school, high school and college students, having a campus and place of business at 1001 Eagle Road, Wayne, Pennsylvania 19087.

3. The College holds itself out as having a long tradition of offering its male cadets a challenging curriculum, a structured learning community, and a dedicated and highly qualified faculty selected for their professional credentials and dedication to providing cadets with a rigorous college preparatory curriculum within a "diverse group of peers."

4. During the years relevant to this complaint, Blacks comprised less than 10% of the faculty, and less than 1% of the entire cadet body. The College undertook no meaningful efforts to recruit and/or hire minorities (especially Blacks) into the faculty or cadet ranks.

## ***JURISDICTION AND VENUE***

5. Jurisdiction is conferred upon this District Court pursuant to 28 U.S.C. §1331, in that the cause of action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*. ("ADA").

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e), in that the Academy is headquartered in this district; a substantial part of the events or omissions giving rise to the cause of action occurred in this district; and no real property is involved.

## ***FACTUAL BACKGROUND***

***Background of plaintiff's employment at the Academy***

7. Plaintiff was hired by the College on or about August 17, 2017 as an assistant professor of criminal justice under a one-year letter contract for the academic year (AY) 2017-2018.

8. Plaintiff was re-appointed to the faculty of the College under successive one-year letter contracts as an assistant professor of criminal justice for AY 2018-2019, 2019-2020, 2020-2021, 2021-2022, and 2022-2023.

9. During each academic year, plaintiff received ratings of "excellent expectations" or "achieved expectations" in all areas of major objectives, success factors, and performance objectives and deliverables.

10. Plaintiff received a rating of "satisfactory" [highest rating] for classroom observation in all areas the College used to appraise objectives and results achieved for faculty at the College.

11. Plaintiff's assessment ratings for results achieved and classroom observation demonstrated an extremely high level of performance and competency reserved for only top

performers; where plaintiff's assessments "achieved expectations", the College viewed this as a positive rating and an appropriate assessment for the faculty member who was doing a good job.

12. During his tenure, plaintiff took on leadership roles in updating and developing new curriculum and courses and assessments; served as co-chair of the Curriculum Committee and Middle States Self-Study Steering Committee; and worked with the dean's office, college community and faculty to develop community connections with criminal justice organizations.

13. In May, 2022, leading into AY 2022-2023 when the assessment work expanded to areas outside plaintiff's faculty and teaching duties, plaintiff requested a salary increase, a title of Director of Assessments for the college, and a written description of the position.

14. In May, 2022, Provost and Chief Academic Officer Robert Smith (Ph.D.) appointed plaintiff Director of Assessments and agreed to the salary increase and announced plaintiff's assessment role, all in addition to his teaching and faculty duties as an assistant professor.

15. As Director of Assessments for the College, plaintiff compiled course evaluation data, worked with the provost to prepare analysis of course evaluations, and worked with the Dean of College Services to centralize the process for all assessment activities College-wide.

16. Plaintiff's assessment work in 2022 was instrumental in ensuring the College achieved and maintained its Middle States Conference collegiate assessment accreditation in co-curricular and student services programs.

17. After plaintiff was appointed Director of Assessments and completed the assessments work to secure accreditation for the College, Dr. Smith reneged on the pay raise for AY 2021-2022 (pro-rated), and for AY 2022-2023.

18. Plaintiff had been periodically sick in the summer of 2022 and was diagnosed

with multiple sclerosis (MS) on June 23, 2022. Plaintiff informed Dr. Smith of the diagnosis the next day and that his illness was in the initial stages.

19. During the summer of 2022, as plaintiff's assessment work wrapped up, Dr. Smith suddenly became agitated over the assessment issues and plaintiff's new role and the salary increase, and delayed honoring his commitment.

20. Plaintiff treated for his MS over the summer (Dr. Smith was aware); even though the College was not in session Dr. Smith required plaintiff to attend all virtual meetings.

21. As the AY 2022-2023 Fall semester approached, Dr. Smith required plaintiff to be on campus, in-person all day, but did not provide plaintiff with an office.

22. On or about August 24, 2022, when plaintiff realized Dr. Smith would not honor the salary increase as promised, plaintiff filed a grievance against Dr. Smith.

23. Plaintiff was then told to continue the assessment duties under the same title even though the College was hiring an "Institutional Director" of assessments for this work without involving plaintiff, and plaintiff was pushed aside.

24. The grievance was never resolved. Instead, Dr. Smith wrote plaintiff a long, confusing explanation to avoid honoring his agreement, which led to untruthful statements about plaintiff as an excuse to not pay plaintiff.

25. Plaintiff throughout his tenure was evaluated as an engaging, challenging and committed instructor, setting high expectations for himself and his cadets, performing his duties as assistant professor and faculty member in exemplary fashion.

26. At the conclusion of the AY 2021-2022, even though plaintiff was intentionally pushed aside after his MS diagnosis, the College acknowledged plaintiff was poised to have a "great year with even more responsibility in 2022-2023".

***Diagnosis of multiple sclerosis and need for reasonable accommodation***

27. On or about June 23, 2022, plaintiff was diagnosed with multiple sclerosis (MS); plaintiff informed Dr. Smith of his diagnosis on June 24, 2022.

28. Multiple sclerosis is a lifelong chronic progressive disease characterized by exacerbations and remissions, and in plaintiff's case, very treatable with proper managed care.

29. Plaintiff was in the initial period of this disease at onset, and received a guarded prognosis with active management during subsequent hospital and doctor's visits in July, 2022.

30. On August 28, 2022, plaintiff emailed Dr. Smith requesting a meeting with Human Resources to discuss his need for reasonable accommodations due to his MS diagnosis, to enable him to meet his faculty commitments for AY 2022-2023.

31. Plaintiff explained extended walking, sitting and standing, and extended hours would cause complications, that he was under doctors' care, and he would need time off work if he suffered an exacerbation and to meet his medical appointments.

32. On August 29, 2022, Dr. Smith told plaintiff he and HR director Penny Vander Wielen would work with plaintiff "to move [him] through the process for reasonable accommodations", and agreed to delete plaintiff's medical issues from his AY 2021-2022 evaluation.

33. On August 30, 2022, plaintiff's treating neurologist (Schindler, M.D.) prepared and signed a letter that plaintiff was suffering from a medical condition [MS] that may temporarily impair his ability to work, and that he would need to be excused from work if the symptoms arise.

34. The letter stated the conditions/symptoms were not permanent, and plaintiff would be able to return to his full duties, in time, and with treatment. His physician wrote:

"[w]hile we cannot predict how long this process will take, [w]e expect improvement over the next 4 to 8 weeks."

35. Plaintiff emailed the August 30, 2022 letter to the HR director the same day, requesting reasonable accommodations in his job and disability claim forms to start the disability process in the event his condition worsened.

36. Plaintiff met with human resource director Vander Wielen on September 8, 2022 to discuss his need for leave under the Family Leave Act (FMLA) for the fall semester AY 2022-23; plaintiff provided his FMLA physician certification and paperwork at that time.

37. Plaintiff's treating physician certified plaintiff was unable to stand for more than 3 hours per day; plaintiff could teach one or two classes per day in person, limited to 3 hours per day/5 days per week, and the remainder virtually from his home if his condition exacerbated.

38. The physician further certified plaintiff would need a reduced schedule to attend medical appointments, as MS was a condition prone to episodic flareups that could occur on the days he might be teaching in the classroom.

39. In the September 8, 2022 meeting, plaintiff again told the HR director he would need reasonable accommodations in his job in accordance with the FMLA paperwork and physician certification and letter.

40. HR director Vander Wielen offered "some accommodation recommendations" on September 8, 2022 including a golf cart as a "possible solution", and ramps and an unspecified alternate classroom, but no virtual work accommodations requested by plaintiff and directed by his physician.

41. Plaintiff again informed Dr. Smith on September 12, 2022 that he needed to go

out sick on FMLA leave with an *unknown return to work date*, and that he had a doctor's appointment on September 23, 2022 and would be re-evaluated at that time.

42. On September 13, 2022, plaintiff emailed Dr. Smith reiterating he would need a reasonable accommodation of teaching virtually during his disability flareups, and that the FMLA paperwork and doctor's letter outlined the medical restrictions and physical limitations.

43. In the September 13, 2022 email, plaintiff summarized his submissions to the College about his conditions and requests, and that HR director Vander Wielen chose to engage in a "battle" over the disability and FMLA law instead of engaging fairly with plaintiff and providing the accommodations.

44. The HR director approved plaintiff's FMLA leave on September 21, 2022 and that he met the eligibility requirements for job protection as of September 8, 2022, but needed clarification for "frequency of intermittent leave noted" and wanted plaintiff's doctor to provide suggestions for accommodations.

45. The certification was accurate and complete for plaintiff's medical conditions, the frequency and duration of the illness, limitations at work and in the classroom, and that "remote/virtual-work" was the suggested reasonable accommodation.

46. On September 19, 2022, plaintiff emailed the HR director that his physician suggested a reasonable accommodation in his certification that the College refused to grant.

47. During the entire time plaintiff was out on leave, up through the period he notified the College he intended to return to work (11/18/2022), the College never offered, and in fact refused, a remote/virtual-work arrangement to accommodate plaintiff during his MS flare-ups.

48. On September 21, 2022, HR director Vander Wielen emailed plaintiff the College

would apply FMLA to his absences in August, but she needed "clarification on the type of leave [plaintiff] need[ed]".

49. Vander Wielin's requests were a ruse to stall and obstruct the interactive process, as plaintiff and his physician had long made it clear he would be out on leave until he had a return date, and once he returned, his leave would be intermittent.

50. The HR director sent plaintiff the disability forms on September 13, 2022; he completed and returned the forms to HR, and went out of work on approved disability leave in the last week of September, 2022.

51. The College finally sent plaintiff his FMLA eligibility form letter on September 27, 2022, approving his leave for the period 09/12/2022 through 12/12/2022, and was told to contact human resources upon returning to work "if accommodations were required."

***Denial of reasonable accommodation upon return to work***

52. On November 17, 2022, plaintiff emailed HR director Vander Wielen he was medically cleared and intended to return to work on Monday, November 21, 2022, if he received the needed accommodations.

53. Plaintiff provided the HR director with a letter from his treating neurologist (Schindler, M.D.) dated 11/16/2022 that he was able to return to work on 11/21/2022 with accommodations, but that plaintiff was "prone to develop symptoms which may temporarily impact his ability to work."

54. Dr. Schindler's letter was clear that "we ask him to be able to work remotely or be excused from work *if these symptoms arise.* We believe the accommodations will allow Mr. Davis to perform all job duties while maintaining a good quality of life."

55. On November 18, 2022, HR director Vander Wielen sent plaintiff a form letter requesting an additional medical certification for specific information on his medical condition and work accommodation *already provided to the College*.

56. The HR director, with no good reason except to intimidate and obstruct plaintiff in the interactive process, placed plaintiff on paid leave through November 28, 2022, and postponed his return date to November 29, 2022 until plaintiff provided an additional medical certification.

57. On November 29, 2022, plaintiff treating neurologist (Schindler, M.D.) wrote a supplemental letter describing plaintiff's medical diagnosis and symptomology, the potential intermittent nature of his condition, re-iterating that the symptoms "[may]come and go intermittently but are chronic/lifelong."

58. Dr. Schindler reiterated: "[d]ue to his medical condition, Mr. Davis is prone to develop symptoms which may temporarily impact his ability to work. We ask for him to be able to work remotely or be excused from work if these symptoms arise. We believe the accommodations will allow Mr. Davis to perform *all job duties* while maintaining a good quality of life." (emphasis supplied).

59. The College never responded or followed up with plaintiff to address Dr. Schindler's letters, and never offered, and in fact refused, the remote/virtual-work accommodation recommended by Dr. Schindler and requested by plaintiff.

60. Although the College offered a golf cart (plaintiff did not request it) and a new classroom office at McMaster 1 (plaintiff did not request this either) on September 23, 2022 (plaintiff was in initial treatment), the College offered none of these accommodations in November, 2022 when plaintiff was cleared to return to work.

61. In November, 2022, from an earlier relocation of offices, the College had a vacant office near plaintiff's classroom; plaintiff requested he be assigned to that office as an on-campus accommodation and the College refused.

62. Dr. Smith was fully aware of plaintiff's illness and limitations and need for accommodations as early as June, 2022 and throughout the summer of 2022, yet he continued to demand plaintiff remain on campus, in-person all day.

63. Dr. Smith refused to provide plaintiff with an office in anticipation of his return to work. Even new faculty were assigned to a permanent office in an appropriate location.

64. The College's belligerent denial of the virtual-work accommodation in the event plaintiff suffered a flareup was deliberate and intentional; state-of-the-art audio/visual equipment was on site and available to fully accommodate plaintiff in his teaching duties and faculty work.

65. The College during the Covid-19 period in 2020-2021 used a full campus virtual-teaching environment for all cadets and all faculty with no interruption in academics or faculty deliverables.

66. The College had the same audio/visual technology on site and in place at no additional cost for AY 2022-2023 to allow plaintiff, as necessary and required in the event of a flareup, to teach and work through a virtual classroom and office.

67. The virtual office/classroom capabilities in place in AY 2022-2023 would allow plaintiff in the event of a flareup to perform the *full duties* of his job with no interruption or diminution of his acumen, skill or effectiveness.

68. To contrast the barrier blocking plaintiff from returning to work, female faculty at the College are currently teaching several of their courses virtually and the practice is endorsed.

69. As of November 29, 2022, the College had offered plaintiff no reasonable accommodations to enable him to return to his teaching and faculty duties.

70. The College continues to deliberately and arbitrarily prevent plaintiff from returning to work by denying reasonable accommodations.

71. On or about December 16, 2022, plaintiff filed his charge of discrimination (no. 530-2023-01847) for race, retaliation and disability with the EEOC.

72. On March 14, 2023, plaintiff received his determination of charge and notice of right to sue from the EEOC, and plaintiff has exhausted.

## ***COUNT I***

***Plaintiff v. The College***
***[Disability Discrimination under the ADA]***

73. Plaintiff incorporates herein by reference paragraphs 1 through 72, inclusive, as though the same were more fully set forth at length.

74. At all times relevant and material, the College was a covered entity under the ADA required to provide plaintiff with reasonable accommodation of a substantially limiting impairment in a major life's activity, to allow him equal employment opportunities at the Academy.

75. At all times relevant and material, plaintiff was a qualified individual with a disability in his substantially limiting impairment that prevented him from performing his employment at the College.

76. As such, plaintiff was entitled to accommodations to perform the essential functions of his position at the College and enjoy equal benefits and privileges of employment and equal employment opportunities enjoyed by employees without disabilities.

77. The College, as a covered entity under the ADA, knew of plaintiff's impairment and once plaintiff made the request, was required to provide a reasonable accommodation to enable plaintiff to perform the essential functions of his job.

78. The College under the ADA was required to engage plaintiff in the interactive process, including considering the preferences of the plaintiff and recommendations of his doctors, to select and implement the accommodation most appropriate for both the College and plaintiff.

79. Here, the most appropriate accommodation – virtual work or remote-work during plaintiff's period of intermittent flareups of his MS – was so obvious both medically and structurally that it could have been granted at no cost, or nominal cost or inconvenience to the College.

80. The College deliberately and arbitrarily obstructed, and failed and refused to engage plaintiff in the accommodation process both in August and September, 2022, and again upon plaintiff's request to return to work in November, 2022.

81. The College never identified any essential function of plaintiff's job he could not have performed through virtual or remote work, and the College never suggested outside technical assistance to establish a virtual work program to accommodate plaintiff's flareups.

82. The College never considered whether the impact of plaintiff's virtual or remote work accommodation was outweighed by any essential function of his job that required his on-campus presence during an intermittent period of flareup.

83. Because the College blocked plaintiff's return to work, it further blocked its ability to assess the effectiveness or ineffectiveness of plaintiff's virtual work accommodation during an intermittent period of flareup.

84. Notwithstanding the refusal to accommodate through virtual work, the College offered no alternative reasonable accommodations to enable plaintiff to return to work in November, 2022 or thereafter.

85. Denial of reasonable accommodations by the College under the ADA constitutes disability discrimination under Title I of the ADA.

86. Denial of reasonable accommodations by the College that prevented plaintiff as a qualified individual with a disability from working at the College constitutes adverse employment action under the ADA.

87. As the result of the denial of accommodations, the College constructively discharged plaintiff from his employment.

88. Plaintiff's disability was a contributing and/or sole factor in the College's decisions as regards plaintiff and the adverse actions towards his employment as aforesaid.

89. The College acted with illegal discriminatory motive towards plaintiff in his employment based on his disability.

90. As a result, plaintiff suffered lost wages (back pay/front pay), retirement benefits, health care and medical benefits, lost position emoluments and accoutrements in his employment and career, denigration in his career and family and personal life, and other damages and harm.

91. Valley Forge Military Academy and College, acting as aforesaid, discriminated against plaintiff in his employment under the ADA, and has violated the ADA.

92. Valley Forge Military Academy and College, acting as aforesaid, engaged in such illegal discriminatory practices intentionally and with malice, and/or with reckless indifference towards the federally protected rights of plaintiff.

WHEREFORE, plaintiff, Randy L. Davis, Jr. demands judgment in his favor and against defendant, Valley Forge Military Academy and College, for statutory damages, lost wages (including back pay, front pay) retirement benefits, health care and medical benefits, lost position emoluments and accoutrements in his employment and career, incidental and consequential damages, liquidated damages, prejudgment interest, exemplary and punitive damages, injunctive relief and/or affirmative relief as determined by the court to effect to purposes of the Americans with Disabilities Act of 1990, as amended, and such other relief as the court deems just.

*/s/ J. Stephen Woodside*_______________
J. Stephen Woodside
Attorney for plaintiff

J. STEPHEN WOODSIDE, P.C.
One Belmont Avenue-Suite 324
Bala Cynwyd, PA 19004
(610) 278-2442
(610) 278-2644 (fax)
*jstephenwoodside@verizon.net*

DATED: May 24, 2023

***JURY DEMAND***

Plaintiff requests a trial by a jury of twelve (12) persons on all issues so triable.

*/s/ J. Stephen Woodside*_____________
J. Stephen Woodside
Attorney for plaintiff

DATED: May 24, 2023