UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLAVANIA

_____
                                        :
RANDY L. DAVIS, JR.,                    :        NO. 2:23-CV-02004-KBH
                                        :
            Plaintiff,                  :
                                        :
        v.                              :
                                        :
VALLEY FORGE MILITARY                   :
ACADEMY AND COLLEGE                     :
                                        :
            Defendant.                  :
                                        :
_____ :

***PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS UNDER RULE 12(b)(6) AND IN SUPPORT OF CROSS-MOTION TO STRIKE
FROM THE RECORD THE CERTIFICATION OF CHRISTOPHER GILLIGAN, ESQUIRE
AND EXHIBITS C-R, INCLUSIVE, TO THAT CERTIFICATION (DOC.4-3)***

**I.      RELEVANT FACTUAL BACKGROUND**

    **A.      *Plaintiff's employment at the College***

Plaintiff was hired by Valley Forge Military Academy and College ("College" or "Valley Forge") on August 17, 2017 as an assistant professor of criminal justice under a one-year letter contract for the academic year (AY) 2017-2018. Complnt.¶7.  Plaintiff was re-appointed to the faculty of the College under successive one-year letter contracts as an assistant professor of criminal justice for academic years (AY) 2018-2019, 2019-2020, 2020-2021, 2021-2022, and 2022-2023. Complnt.¶8.

During each academic year, plaintiff received ratings of "excellent expectations" or "achieved expectations" in all areas of major objectives, success factors, and performance objectives. Complnt.¶9.  Plaintiff received the highest ratings in all areas the College used to appraise objectives and results achieved for faculty at the College.  During his tenure, plaintiff

took on leadership roles in updating and developing new curriculum and courses and

assessments, and served as co-chair of the Curriculum Committee and Middle States Self-Study

Steering Committee. Complnt.¶12.

In May, 2022, Provost/Chief Academic Officer Robert Smith (Ph.D.) appointed plaintiff

Director of Assessments for the college, increased plaintiff's salary and announced plaintiff's

assessment role, in addition to his teaching and faculty duties.[1] Complnt.¶¶13-14.  After plaintiff

was appointed Director of Assessments and completed the assessments work to secure

accreditation for the College, Dr. Smith reneged on the pay raise for AY 2021-2022 and 2022-

2023. Complnt.¶17.

Plaintiff was periodically sick in the summer of 2022 and was diagnosed with multiple

sclerosis (MS) on June 23, 2022.  Plaintiff informed Dr. Smith his illness was in the initial

stages. Complnt.¶18.  During the summer of 2022, as plaintiff's assessment work wrapped up,

Dr. Smith became agitated over the assessment issues and plaintiff's new role and the salary

increase, and delayed honoring his commitment. Complnt.¶19.

Plaintiff treated for his MS over the summer (Dr. Smith was aware).  Even though the

College was not in session, Dr. Smith required plaintiff to attend all virtual meetings. Complnt.

¶20.  As the AY 2022-2023 Fall semester approached, Dr. Smith required plaintiff to be on

campus, in-person all day, but did not provide plaintiff with an office.  On or about August 24,

2022, when plaintiff realized Dr. Smith would not honor the salary increase as promised, plaintiff

---

[1]  Plaintiff's assessment work in 2022 was instrumental in ensuring the College achieved and maintained its Middle States Conference collegiate assessment accreditation in co-curricular and student services programs. Complnt.¶16.  At the conclusion of AY 2021-2022, the College acknowledged plaintiff was poised to have a "great year with even more responsibility in 2022-2023". Complnt.¶26.

filed a grievance against Dr. Smith. Complnt.¶22. The grievance was never resolved, and plaintiff never received his pay increase. Complnt.¶24.

      **B.**    ***Diagnosis of multiple sclerosis and need for reasonable accommodation***

Plaintiff informed Dr. Smith of his MS diagnosis on June 24, 2022. Complnt.¶27. Multiple sclerosis is a lifelong chronic progressive disease characterized by exacerbations and remissions, and in plaintiff's case, very treatable with proper managed care. Complnt.¶28. Plaintiff was in the initial period of this disease at onset, and received a guarded prognosis with active management during subsequent hospital and doctor's visits in July, 2022. Complnt.¶29.

On August 28, 2022, plaintiff emailed Dr. Smith requesting a meeting with Human Resources to discuss his need for reasonable accommodations due to his MS for AY 2022-2023. Complnt.¶30.  Plaintiff explained extended walking, sitting and standing, and extended hours would cause complications, that he was under doctors' care, and he would need time off work if he suffered an exacerbation and to meet medical appointments. Complnt.¶¶31-32.

On August 30, 2022, plaintiff's treating neurologist (Schindler, M.D.) wrote that plaintiff's multiple sclerosis may temporarily impair his ability to work, and that he would need to be excused from work if symptoms arose. Complnt.¶33.  Plaintiff's conditions/symptoms were not permanent, and he would be able to return to his full duties with improvement expected over the next 4 to 8 weeks." Complnt.¶34.  Plaintiff sent his doctor's letter to the HR the same day, requesting reasonable accommodations in his job and disability claim forms to start the disability process in the event his condition worsened. Complnt.¶35.

On September 8, 2023 plaintiff requested FMLA leave and provided his physician certification and paperwork. Complnt.¶36.  Plaintiff's physician certified he was unable to stand for more than 3 hours per day; plaintiff could teach one or two classes per day in person, limited

to 3 hours per day/5 days per week, and the remainder virtually from his home if his condition exacerbated.  The physician certified plaintiff would need a reduced schedule to attend medical appointments, as MS was a condition prone to episodic flareups that could occur on the days he might be teaching in the classroom. Complnt.¶¶37-38.  Plaintiff told the HR director he would need reasonable accommodations in his job. Complnt.¶39.

HR director Vander Wielen offered "some accommodation recommendations" on September 8, 2022 including a golf cart as a "possible solution", and ramps and an unspecified alternate classroom, but no virtual work accommodations requested by plaintiff and directed by his physician. Complnt.¶40.  On September 13, 2022, plaintiff emailed Dr. Smith reiterating he would need a reasonable accommodation of teaching virtually during his disability flareups.  The FMLA paperwork and doctor's letter outlined the medical restrictions and physical limitations. Complnt.¶42.  Plaintiff explained his medical conditions to the College.  HR director Vander Wielen chose to engage in a "battle" over his disability and need for accommodations. Complnt.¶43.

The HR director approved plaintiff's FMLA leave on September 21, 2022, but claimed she needed clarification for "frequency of intermittent leave noted" and wanted plaintiff's doctor to provide suggestions for accommodations. Complnt.¶44.  The certification was accurate and complete for plaintiff's medical conditions, the frequency and duration of the illness, limitations at work and in the classroom, and that "remote/virtual-work" was the suggested reasonable accommodation. Complnt.¶45.  On September 19, 2022, plaintiff emailed the HR director that his physician suggested a reasonable accommodation in his certification that the College refused to grant. Complnt.¶46.

During the entire time plaintiff was out on leave through the period he notified the

4

College he intended to return to work (11/18/2022), the College never offered (and in fact refused) a remote/virtual-work arrangement to accommodate plaintiff during his MS flare-ups. On September 21, 2022, HR director Vander Wielen emailed plaintiff she needed "clarification" on the type of leave plaintiff needed (Complnt.¶48), even though his physician had long made it clear he would be out on leave until he had a return date, and once he returned, his leave would be intermittent. Complnt.¶47-48.

Plaintiff went out of work on approved disability leave in the last week of September, 2022. Complnt.¶50.  The College sent plaintiff his FMLA eligibility form letter on September 27, 2022, approving his leave for the period 09/12/2022 through 12/12/2022.  Plaintiff was told to contact human resources upon returning to work "if accommodations were required." Complnt. ¶51.

### C.   _Denial of reasonable accommodation upon return to work_

On November 17, 2022, plaintiff emailed HR director Vander Wielen he was medically cleared and intended to return to work on Monday, November 21, 2022, if he received the needed accommodations. Complnt.¶52.  Plaintiff provided the HR director with a letter from his neurologist (dated 11/16/2022) that he was able to return to work on 11/21/2022 with accommodations, but that plaintiff was "prone to develop symptoms which may temporarily impact his ability to work." Complnt.¶53.  His doctor was clear that "we ask him to be able to work remotely or be excused from work _if these symptoms arise._  We believe the accommodations will allow Mr. Davis to perform all job duties while maintaining a good quality of life." Complnt.¶54 (emphasis in the complaint).

On November 18, 2022, HR director Vander Wielen sent plaintiff a form letter requesting an additional certification for specific information on his medical condition and work

accommodation *already provided to the College*. Complnt.¶55.  The HR director placed plaintiff

on paid leave through November 28, 2022, and postponed his return date to November 29, 2022.

Complnt.¶56.  On November 29, 2022, plaintiff's neurologist wrote a supplemental letter

describing plaintiff's medical diagnosis and symptomology, the potential intermittent nature of

his condition, re-iterating that the symptoms "[may]come and go intermittently but are

chronic/lifelong." Complnt.¶57. [2]

The College never followed up with plaintiff over Dr. Schindler's letters, and never

offered, and in fact refused, the remote/virtual-work accommodation recommended by Dr.

Schindler and requested by plaintiff. Complnt.¶59.  Although the College offered a golf cart

(plaintiff did not request it) and a new classroom office at McMaster 1 (plaintiff did not request

this either) on September 23, 2022, the College offered none of these accommodations in

November, 2022 when plaintiff was cleared to return to work. Complnt.¶59.  In November, 2022,

the College had a vacant office near plaintiff's classroom.  Plaintiff requested he be assigned to

that office as an on-campus accommodation and the College refused. Complnt.¶61.

Dr. Smith was fully aware of plaintiff's illness and limitations and need for

accommodations as early as June, 2022 (and throughout the summer) yet he continued to

demand plaintiff remain on campus, in-person all day. Complnt.¶62.  Dr. Smith refused to

provide plaintiff with an office in anticipation of his return to work.  Even new faculty were

assigned to a permanent office in an appropriate location. Complnt.¶63.  The College's denial of

---

[2] Dr. Schindler reiterated: "[d]ue to his medical condition, Mr. Davis is prone to develop symptoms which may temporarily impact his ability to work.  We ask for him to be able to work remotely or be excused from work if these symptoms arise.  We believe the accommodations will allow Mr. Davis to perform *all job duties* while maintaining a good quality of life." (emphasis supplied). Complnt.¶58.

the virtual-work accommodation in the event plaintiff suffered a flareup was deliberate.  State-of-the-art audio/visual equipment was on site and available to fully accommodate plaintiff in his teaching duties and faculty work. Complnt.¶64.[3]

The virtual office/classroom capabilities in place in AY 2022-2023 would allow plaintiff in the event of a flareup to perform the *full duties* of his job with no interruption or diminution of teaching effectiveness. Complnt.¶67.  To contrast the barrier blocking plaintiff from returning to work, female faculty at the College are currently teaching several of their courses virtually and the practice is endorsed. Complnt.¶68.  As of November 29, 2022, the College offered plaintiff no reasonable accommodations to enable him to return to his teaching and faculty duties. Complnt.¶69.  The College continues to deliberately and arbitrarily prevent plaintiff from returning to work by denying reasonable accommodations.  Plaintiff suffered a constructive discharge in his employment. Complnt.¶¶70; 83-87.

## II.   *LEGAL ARGUMENT*

### A.   *Standard on Rule 12(b)(6) motion*

In ruling on a motion to dismiss under Rule 12(b)(6), the district court must accept as true all well-pleaded allegations in the complaint, and must view the facts and inferences to be drawn from the pleadings in light most favorable to the non-moving party. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3rd Cir.1993)(citations omitted).  The proper inquiry is whether relief could be granted…under any set of facts that could be proved consistent with

---

[3] The College during the Covid-19 period in 2020-2021 used a full campus virtual-teaching environment for all cadets and all faculty with no interruption in academics or faculty deliverables. Complnt.¶65.  The College had the same audio/visual technology on site and in place at no additional cost for AY 2022-2023 to allow plaintiff, as necessary and required in the event of a flareup, to teach and work through a virtual classroom and office. Complnt.¶66.

the allegations." *Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 71 (3rd Cir.1994)(quoting

*National Org. for Women, Inc. v. Scheidler*, 410 U.S. 249, 256 (1994).

In considering a motion to dismiss the Court may consider *only* the allegations contained

in the pleading to determine its sufficiency. *In re Asbestos Products Liability Lit. (No. VI)*, 822

F.3d 125, 133 (3rd Cir.2016)(citations omitted)(emphasis in original).  Dismissal is appropriate

under Rule 12(b)(6) *only* if it is clear that plaintiff would prove no set of facts that would entitle

him to relief and therefore movant is entitled to judgment as a matter of law. *United States v.*

*Occidental Chem. Corp.*, 200 F.3d 143 (3rd Cir.1999)(emphasis supplied); *Regalbuto v. City of*

*Philadelphia*, 937 F.Supp. 374, 377 (E.D.Pa.1995), *aff'd*, 91 F.3d 125 (3rd Cir.1996), *cert denied*,

519 U.S. 982 (1996).

The Third Circuit has enumerated the steps under which evaluation of the sufficiency of

the complaint must be made: First, the court must "take note of the elements a plaintiff must

plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947 (2009).  Second,

the court should identify allegations that, "because they are no more than conclusions, are not

entitled to the assumption of truth." *Id.* 126 S.Ct. at 1950.  Third, "when there are well pleaded

factual allegations, the court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief." *Id.*; *Koller v. Riley Riper et al.*, 850 F.Supp.2d

502 (E.D.Pa.2012), citing, *Malleus v. George*, 641 F.3d 560, 563 (3rd Cir.2011).

Overall, the complaint must contain "enough factual matter to suggest" the required

element(s).  This does not impose a probability requirement at the pleading stage, but instead

"simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3rd

Cir.2008), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)(internal citations omitted).

Overall, the pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3rd Cir.2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, supra, 129 S.Ct. at 1949).

**B.      *Standard on extrinsic evidence under Rule 12(b)(6)***

Valley Forge argues for dismissal by attempting to raise a controversy over reasonable accommodations through extrinsic evidence, not over the legal sufficiency of the ADA claim itself.  "To decide a motion to dismiss, courts generally are constrained to consider only the allegations contained in the complaint, the exhibits attached to the complaint and matters of public record", *Schmidt v. Skolas*, 770 F.3d 241, 249 (3rd Cir.2014)(quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir.1993), and where *appropriate and necessary* "an undisputedly authentic document that a defendant attaches as an exhibit to a motion if the plaintiff's claims are based on the document." *Pension Benefit v. White Consol.*, 998 F.2d at 1196; *Hartig Drug Co., Inc. v. Senju Pharmaceutical Co., Ltd.,* 836 F.3d 261, 273 (3rd Cir.2016)(internal citations omitted).

Plaintiff's claims are based on a document only if the document is "integral to or explicitly relied upon in the complaint". *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3rd Cir.1997)(citations and internal quotation marks omitted).  Only under such circumstances can the court consider such evidence without converting the motion into one for

summary judgment under Rule 56. *In re Burlington Coat Factory.,* 114 F.3d at 1426.[4] *And see,* FN 6, this brief. "What is critical is whether the claims in the complaint are "based" on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d at 249.

"Although the Court may consider a document that is 'integral' to the Complaint, that does not mean the Court may consider *any* document offered to address an integral factual issue…[and a document] does not become 'integral to the Complaint' merely because it addresses a central factual issue in the Complaint." *O'Neill v. Chester Downs & Marina, LLC*, CA no. 15-01902 (E.D.Pa. Sept. 8, 2015)(Pappert, J.)(emphasis supplied), citing *Jackson v. Alpharma Inc.*, No.07-cv-3250 2008 WL 508664 at *3 (D.N.J. Feb.21, 2008); *McCarron v. British Telecom*, No. 00-cv-6123, 2001 WL 632927 (E.D.Pa. June 6, 2001)(where declaration proffered to support defense plaintiff was not defendant's employer; *held*, facts in the declaration were not integral or explicitly relied upon in the complaint and improper for consideration under Rule 12(b)(6)).

C. *Extrinsic evidence attached under Christopher Gilligan Esquire's certification is improper for consideration on a Rule 12(b)(6) motion; the College has failed to proffer any argument to convert the motion under Rule 12(d) on this improper evidence*

1. *Defendant's legal argument for use of extrinsic evidence under Rule 12(b)(6) is inherently faulty*

---

[4] Rule 12(d) states: "If, on motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Any decision by the court to convert a Rule 12(b)(6) motion to a Rule 56 motion must be on notice and order allowing the parties a reasonable opportunity to present additional material prior to converting the motion. *Burton v. Nationstar Mortg. LLC*, 255 F.Supp.3d 616, 619-620 (E.D.Pa.2015)(internal citations omitted).

The framework through which Valley Forge attempts to utilize improper extrinsic evidence under Rule 12(b)(6) is inherently faulty.  Instead of following proper Rule 12(b)(6) standards to avoid a Rule 56 conversion, Valley Forge proffers an assortment of allegations through numerous unauthenticated documents stapled to Mr. Gilligan's certification labeled "Relevant Facts Omitted from Plaintiff's Complaint" to dismiss the complaint. (Deft's brief at 5; Doc.4-2).  Because Valley Forge fails the clear standards on extrinsic evidence under Rule 12(b)(6), and has failed to proffer a justiciable reason to convert, the motion procedurally fails and must be denied.

Preliminarily, Valley Forge argues plaintiff's complaint pleads facts that "rely on misrepresentations of the facts of this case", and "when these misrepresentations are resolved, [p]laintiff's claim for disability discrimination collapses". (Deft's brief at 13; Doc.4-2).  Nothing in the complaint identifies or pleads any misrepresentations of fact by any party.  Valley Forge cites no allegations in the complaint to support using extrinsic evidence where Valley Forge simply disagrees with plaintiff's facts under the guise plaintiff's allegations are "misrepresented" or untrue.  Valley Forge argues for dismissal entirely from the vantage point of its own defenses and assumptions from a panoply of extrinsic evidence, rather than from the well-pleaded facts in the complaint.  None of this is proper motion practice under Rule 12(b)(6).

Further to this point, "[d]efendant earnestly and repeatedly attempt[ed] to explore reasonable accommodations with plaintiff despite [p]laintiff's refusal to engage in the interactive process." (Deft's brief at 14; Doc.4-2).  Valley Forge argues "[h]ere, it is abundantly apparent that [d]efendant made a good faith effort to assist [p]laintiff in seeking accommodations." (Deft's brief at 16).  Generalizing a handful of plaintiff's allegations, Valley Forge concludes "[i]n contrast to [d]efendant's attempts to engage in the interactive process in good faith,

[p]laintiff has approached finding a reasonable accommodation less as an interactive process and more as only a unilateral demand", and "…this unwillingness to engage can be seen in [p]laintiff's own [c]omplaint" [whatever that means], citing ¶60 of the complaint. (Deft's brief at 16; Doc.4-2).

Further paraphrasing its wish list, Valley Forge argues "[p]laintiff has refused to even provide [d]efendant with sufficient information to determine that working from home is the only way in which he can be reasonably accommodated despite multiple and repeated requests by [d]efendant for this information." (Deft's brief at 17; Doc.4-2). "Defendant was simply attempting to determine whether [p]laintiff's request was the **only** means by which he could be accommodated, or whether there existed another accommodation that would be easier for [d]efendant to provide. Therefore, in isolating the cause of the breakdown in the interactive process, it is clear that [p]laintiff is to blame." (emphasis Valley Forge's). (Deft's brief at 17; Doc.4-2).

None of this is sound predicate for a Rule 12(b)(6) motion where the motion is based solely on extrinsic evidence Valley Forge claims plaintiff omitted from his complaint. The motion must be denied.

> **2.    *Where none of the documents under counsel's certification are integral or explicitly relied on in the complaint, the complaint is not "based" on these extrinsic documents and the motion fails***

Valley Forge's counsel's certification (Doc.4-3) attaches a panoply of extrinsic evidence, categorized and identified as follows: (1) emails and one letter between plaintiff and Valley Forge (Exs.D, F, G, J; Doc.4-3); (2) letters and one email between Valley's Forge's counsel and plaintiff's counsel (Exs.K, M, N, O, P; Doc.4-3); (3) three medical reports (letters) by plaintiff's doctor to Valley Forge and two medical certifications by plaintiff's doctor (Exs.C, E, H, I, L;

Doc.4-3); and (4) a sheet of paper on the "status" of plaintiff's disability policy, and several sheets of paper from an alleged long term disability policy)(Exs.Q, R; Doc.4-3).[5]  None of these documents were attached as exhibits to the complaint or matters of public record.  None of the documents are "undisputedly authentic documents" upon which the complaint is based.  Stapling the documents to a certification by an attorney (except for his own letters) does not authenticate the documents for purposes of a 12(b)(6) motion.

To the documents themselves, the emails by Valley Forge to plaintiff are expressions of its own viewpoints about plaintiff and what Valley Forge unilaterally claims it needed before allowing plaintiff to return to work.  The letters and email between Valley Forge's counsel are argumentative and stake out divergent viewpoints about plaintiff's ADA status and right to accommodations.  The first sheet of the three sheets of paper (Ex.Q, p.1/3)) appears redacted for plaintiff's name, and his name is not on the other sheets.  The content imparts pure speculation for source, meaning and origin of anything connected to plaintiff or his complaint. The complaint does not plead a disability policy.  Similarly, nothing in "Your Group [LTD] Disability Plan" (Ex.R; Doc.4-3) is connected to or identifies the plaintiff.  Exs.Q and R are not authenticated by Valley Forge, and Mr. Gilligan's certification fails to explain what authority he has to certify anything about Valley Forge or the plaintiff.

None of these extrinsic documents are integral or explicitly relied upon or even referenced in the complaint. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.  The complaint therefore could never be "based" on these documents, lack of "undisputed authenticity" (a required element under the rule) notwithstanding. *Hartig Drug v. Senju*

---

[5] Plaintiff does not argue the impropriety of the use of plaintiff's PHRC charge of discrimination (Ex.A) or plaintiff's complaint (Ex.B) in the certification as not inappropriate on a Rule 12(b)(6) motion. Doc.4-3.

*Pharma..,* 836 F.3d at 273.  Valley Forge has failed to proffer any legal or factual argument to the contrary.

The medical reports (letters) and medical certifications by plaintiff's doctors (Exs.C, E, H, I, L; Doc.4-3) are extrinsic documents that contain medical information about plaintiff that, in part, was cited and (in some cases) relied upon in the complaint.  But the fact that a medical report or certification was cited or relied on in a complaint does not mean the complaint was "based on" the report or certification for purposes of a Rule 12(b)(6) motion.  *Schmidt v. Skolas*, 770 F.3d at 249.  Valley Forge has not argued for alteration of controlling law to allow the court to consider any of this evidence on its motion.

Whatever factual issue might attach through this medical evidence as "integral" to the complaint, the fact itself does not allow the court to consider any document offered to address the integral factual issue.  The evidence is not otherwise excepted from the general rule that extrinsic evidence is barred on a Rule 12(b) motion.  A document does not become "integral to the [c]omplaint merely because it addresses a central factual issue in the [c]omplaint." *O'Neill v. Chester Downs & Marina, LLC*, CA no. 15-01902 (E.D.Pa. Sept. 8, 2015)(Pappert, J.); *McCarron v. British Telecom*, No. 00-cv-6123, 2001 WL 632927 (E.D.Pa. June 6, 2001).

The sheet of paper putatively showing the "status" of plaintiff's disability policy and/or benefit, and the sheets of paper from what Valley Forge argues is a long-term disability policy (Exs.Q, R; Doc.4-3) are completely extrinsic to the complaint and are not dispositive of the ADA claim on a Rule 12(b)(6) motion.  The documents are not authenticated and Mr. Gilligan's certification does not alter the incompetency of this extrinsic evidence.  Under Rule 12(b)(6), whether plaintiff is receiving a disability benefit at the same time the employer is discriminating under the ADA is not dispositive of whether the employer violated the ADA when it denied a

reasonable accommodation.  Improper as this extrinsic evidence is, it changes nothing under the well-pleaded facts making out the ADA claim and Valley Forge's failure to accommodate.

The refusal to provide reasonable accommodations that prevented plaintiff from returning to work makes out the ADA claim, not whether plaintiff suffered a constructive discharge, and the ADA claim subsumes the discharge. (Doc.1).  Constructive discharge as a result of Valley Forge's discrimination bears more on the question of damages, not the ADA claim itself. Plaintiff does not have to resign his employment before he can assert a claim for ADA discrimination for failure to accommodate (Deft's brief at 18-19; Doc.4-2).  Valley Forge's argument that plaintiff is still "employed" by Valley Forge because he concurrently receives a disability benefit – all based on improper extrinsic evidence – is bewildering and inapposite to the well-pleaded ADA claim. See *Id.*  Valley Forge's motion to dismiss under Rule 12(b)(6) must be denied.

> **D.**     ***The ADA claim is justiciable under controlling law and survives dismissal under Rule 12(b)(6)***
>
> **1.**     **Standard on ADA**

To make out a *prima facie* case of disability discrimination under the ADA, plaintiff must establish that he: (1) has a "disability"; (2) is a "qualified individual", and (3) has suffered an adverse employment action because of that disability. *Turner v. Hershey Chocolate U.S.* 440 F.3d 604 (3rd Cir.2006). A "qualified individual" is defined as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position such individual holds or desires" 42 U.S.C. § 12111(8); *Id.*, citing *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3rd Cir.2002).

The EEOC regulations divide this inquiry into two parts: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position

sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position. 29 C.F.R. §1630.2(n); *Buskirk v. Apollo Metals*, 307 F.3d at 168.  The determination of whether an individual with a disability is qualified is made at the time of the employment decision, not at the time of the lawsuit. *Turner v. Hershey Chocolate,* 440 F.3d at 611.

The employer must "[m]ake reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. §12112(b)(5)(A).  An employee with a disability may establish a *prima facie* case under the ADA if he can show he can perform the essential functions of the job with reasonable accommodation and the employer refused to make such accommodation. *Turner v. Hershey Chocolate USA*, 440 F.3d 606, 610 (3rd Cir.2001); 42 U.S.C. §12101 *et seq*., 29 CFR §1630.9 and Appd'x to Part 1630.

### 2.   *Plaintiff's ADA claim is justiciable and survives dismissal*

Plaintiff's ADA claim is justiciable and well-pleaded under controlling law.  The assumption is the facts pleaded in the complaint are true, and Valley Forge does not argue to the contrary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Solely on improper extrinsic evidence, Valley Forge argues from its own vantage point (not plaintiff's) "[d]efendant tried repeatedly to have [p]laintiff provide information sufficient to engage in the interactive process with [p]laintiff.  In response, [d]efendant was provided with threadbare information, belligerence on the part of [p]laintiff and demands that [p]laintiff be provided with the accommodation he wanted." (Deft's brief at 18-19; Doc.4-2).

Mr. Gilligan's certification and the exhibits are not integral to plaintiff's ADA claim for

failure to accommodate. *And see*, argument *supra*.  The certification and exhibits are integral only to Valley Forge's attack on his claim.  Consideration of this extrinsic evidence outside the four corners of the complaint would force an improper conversion to a Rule 56 motion.[6]  Valley Forge has failed to show any of this evidence is excepted from the general rule on prohibition of extrinsic evidence on Rule 12(b)(6) motions. *In re Rockefeller Ctr. Props. Inc. Sec. Litig.*, 184 F.3d 280, 287 (3rd Cir.1999); *Pension Benefit v. White Consol.*, 998 F.2d at 1196; Fed.R.Civ.P. 12(d); *McCarron v. British Telecom*, No. 00-cv-6123, 2001 WL 632927 (E.D.Pa. June 6, 2001)(declaration proffered to support defense plaintiff was not defendant's employer was not integral or explicitly relied upon in the complaint and improper for consideration under Rule 12(b)(6)).  Valley Forge's motion to dismiss must be denied.

### E.   *Valley Forge's extrinsic evidence under certification of its counsel should be stricken from the record*

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ. P. 12(f). "The purpose of [such] a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp.2d 393,

---

[6]  Summary judgment is never appropriate at the pleading stage, and Valley Forge's improper extrinsic evidence is insufficient to convert.  A party is entitled to summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, which may be satisfied by demonstrating the party who bears the burden of proof lacks evidence to support his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In its determination, the court must consider the evidence in a light most favorable to the nonmoving party. *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1378-79 (Fed.Cir.2010).  Once a properly supported motion for summary judgment is made, the burden of production shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Southco, Inc. v. Fivetech Tech., Inc*. (E.D.Pa.2012)

402 (E.D.Pa.2002)(citing *Garlanger v. Verbeke*, 223 F. Supp.2d 596, 609 (D.N.J.2002)).  As a

general matter, Rule 12(f) is directed at pleadings—not motions or briefs.  *Boscov's Dep't Store,*

*Inc. v. Am. Guarantee and Liab. Ins. Co.*, 546 F.Supp.3d 354 (E.D.Pa.2021), citing *PG Publ'g*

*Co. v. Aichele*, 902 F. Supp.2d 724, 735 (W.D.Pa.2012), *aff'd*, 705 F.3d 91 (3rd Cir.2013); see also

*Bunn v. Perdue* , 966 F.3[rd] 1094, 1099 (10th Cir. 2020) ("Generally, ... motions, briefs, and

memoranda may not be attacked by a motion to strike." (quoting *Ysais v. N.M. Jud. Standard*

*Comm'n* , 616 F. Supp.2d 1176, 1184 (D.N.M.2009) )).

     That being said, "courts can entertain motions to strike beyond what Rule 12(f)

provides." *Boscov's v. Am. Guarantee*, 546 F.Supp.3d at 361; *McGinnis v. Midland Funding LLC*,

No. 2:20-cv-05370-JDW, 2021 WL 1061198, at *1 (E.D.Pa. Mar. 19, 2021).  Because "federal

judges have the inherent power to manage cases that come before them," *Williams v. Guard*

*Bryant Fields*, 535 F. App'x 205, 212 (3rd Cir. 2013) (citation omitted), courts may consider

"motions that a party captions a motion to strike but that are different in kind than the motions

that Rule 12(f) contemplates." *Boscov's v. Am. Guarantee*, 546 F.Supp.3d at 361; *McGinnis*, 2021

WL 1061198, at *1; *see, e.g.* , *Lawrence v. Int'l Bus. Mach. Corp.*, No. 12-cv-8433(DLC), 2017

WL 3278917, at *4 (S.D.N.Y. Aug. 1, 2017) (evaluating motion to strike a request for judicial

notice).

     Proper management of this case at the initial pleading stage merits striking from the

docket Valley Forge's attorney's certification and exhibits C-R, inclusive, to that certification.

(Doc.4-3).  None of these documents are a matter of public record or attached or referenced in

the complaint.  The complaint is not based on any of these documents.  The documents are not

integral or central to the allegations in the complaint.  Allegations drawing from part of a medical

record is not an open door to use the entire document on a 12(b)(6) motion.  The documents are

not authenticated and Mr. Gilligan's certification does not alter the incompetency of this extrinsic evidence.  None of these documents could be considered by the court without improperly converting the motion under Rule 56.

Rule 12(f) empowers this Court to strike from the docket on this motion any redundant, immaterial, impertinent, or scandalous matter. Fed.R.Civ. P. 12(f).  Emails and letters between attorneys, and between Valley Forge and plaintiff, discussing plaintiff's medical issues are impertinent and immaterial, and protected as attorney-client communications not waived by the plaintiff.  Valley Forge's own communications about plaintiff are purely self-serving and immaterial.  The medical reports and certifications are impertinent and redundant of plaintiff's allegations on the ADA claim, and contain content far beyond the allegations in plaintiff's complaint. (Doc.1).  The medical documents contain confidential, privileged and protected information under state and federal privacy laws that plaintiff never waived.

Sheets of paper about Valley Forge's allegations (not plaintiff's) that a disability policy or benefit is somehow material or integral to the complaint, are equally immaterial and impertinent matter and should be stricken from the docket on this motion.  The fact that the certification and exhibits were filed under seal changes nothing about the immaterial and impertinent nature of these documents at this stage of the action, and only invites further adversarial proceedings over the record itself raising different legal standards on unsealing.

Accordingly, concurrently with denying Valley Forge's motion to dismiss, the Court must strike from the docket the certification of Christopher Gilligan, Esquire and exhibits C through R, inclusive, attached to that motion. (Doc.4-3).

### III.    <u>*CONCLUSION*</u>

For all the foregoing reasons, plaintiff requests that the Court deny defendant's motion to dismiss under Rule 12(b)(6) and strike from the record the certification of Christopher Gilligan, Esquire and exhibits C through R, inclusive, attached to that motion (Doc.4-3), and that the appropriate order be entered.

Respectfully submitted,

*/s/ J. Stephen Woodside*
 J. Stephen Woodside

J. STEPHEN WOODSIDE, P.C.
One Belmont Avenue, Suite 324
Bala Cynwyd, PA 19004
(610) 278-2442
(610) 278-2644 (fax)
Dated:  July 20, 2023          *jstephenwoodside@verizon.net*

## ***CERTIFICATE OF SERVICE***

The undersigned hereby certifies he served a true and correct copy of plaintiff's brief in opposition to defendant's motion to dismiss and in support of cross-motion to strike certification of counsel and attached exhibits from the record, upon the following via ECF filing on the date set forth below:

> Christopher J. Gilligan, Esquire
> MARGOLIS EDELSTEIN
> The Curtis Center
> 170 S. Independence Mall W., Ste. 400E
> Philadelphia, PA 19106-3337
> *Attorneys for defendant, Valley Forge Military Academy and College*

> */s/ J. Stephen Woodside*_____
> J. Stephen Woodside

Dated:  July 20, 2023