**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RANDY L. DAVIS, JR.,**<br>**Plaintiff,**<br><br>**v.**<br><br>**VALLEY FORGE MILITARY ACADEMY AND COLLEGE,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 23-2004** |

**HODGE, J.** **August 21, 2026**

## MEMORANDUM

In this action, Plaintiff Randy Davis, Jr. ("Plaintiff") asserts one claim of disability discrimination against his former employer, Valley Forge Military Academy and College ("Defendant"), in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, under theories of (1) adverse employment action and (2) failure to accommodate. (ECF No. 1.) Defendant moved for summary judgment (ECF No. 34 (the "Motion")), and Plaintiff opposed Defendant's Motion (ECF No. 41 (the "Opposition")). For the reasons that follow, Defendant's Motion is granted as to Plaintiff's claim for disability discrimination under an adverse employment action theory and denied as to Plaintiff's claim for disability discrimination under a failure to accommodate theory.

## I. BACKGROUND

### A. Factual Background[1]

The following facts are undisputed, as reflected in the parties' respective statements of undisputed material facts and responses thereto.[2] (ECF Nos. 34-4, 41, 42-1.)[3] Plaintiff was hired by Defendant on August 17, 2017 as an Assistant Professor of Criminal Justice at Defendant's Junior College (the "College") under a one-year letter contract for the academic year 2017–2018, which was renewed under successive one-year letter contracts through the 2022–2023 academic year. (ECF No. 34-4 ¶¶ 3–4.) Plaintiff also engaged in faculty assessment work through his roles as Chair of the Curriculum Committee, member of the Assessment Committee, and Middle States Self-Study Co-Chair. (*Id.* ¶¶ 5–7.) Based on Plaintiff's faculty assessment work, Plaintiff's direct supervisor and Provost of the College, Robert F. Smith, Ph.D ("Dr. Smith"), drafted a job description in April 2022 for a new position, Director of Assessment, which he intended to offer to Plaintiff. (*Id.* ¶ 9.) On May 2, 2022, Dr. Smith sent a faculty-wide email announcing Plaintiff as the College's Director of Assessment under the assumption that Plaintiff would sign the job description. (*Id.* ¶ 10.) Dr. Smith then provided Plaintiff with the job description on May 19, 2022, which Plaintiff did not sign. (*Id.* ¶¶ 11–12.)[4] On August 1, 2022, Dr. Smith emailed Plaintiff

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] The Court has cross-referenced each party's statement of undisputed material facts and, unless otherwise noted, disregarded any facts that are in dispute or immaterial for purposes of evaluating the Motion.

[3] Because Plaintiff's Statement of Additional Material Facts Not in Dispute (ECF No. 41 at 28–51), Plaintiff's Declaration (*id.* at 54–57), and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (*id.* at 59–82) appear within the same filing, this Court refers to these documents by their exhibit numbers as identified by Plaintiff— "Ex. A," "Ex. B," and "Ex. C," respectively.

[4] Although Plaintiff states that he disputes these facts, he nonetheless restates them in his Response to Defendant's Statement of Undisputed Material Facts. (Ex. C ¶¶ 11–12.) Therefore, this Court accepts them as undisputed.

regarding the Director of Assessment position, stating that he and another College administrator, "Stu," had decided to hire a full-time Director of Assessment due to the anticipated demands of the role. (*Id.* ¶ 18.) However, Dr. Smith wrote, "I will still be adding the $5,000 to your pay this year for this work and as a raise for your overall work." (*Id.*) Dr. Smith then emailed Penny Vander Wielen ("Ms. Vander Wielen"), the Human Resources ("HR") Director of the College, on August 24, 2022 to request that Plaintiff receive the $5,000 salary increase, effective beginning the 2022–2023 academic year. (*Id.* ¶¶ 8, 22.)

On June 23, 2022, Plaintiff was diagnosed with multiple sclerosis ("MS"); Plaintiff informed Dr. Smith of his diagnosis on June 24, 2022. (*Id.* ¶¶ 14–17.) On August 28, 2022, Plaintiff began discussions with Dr. Smith and Ms. Vander Wielen regarding his need for reasonable accommodations due to his MS. (*Id.* ¶¶ 23–24.)[5] During this time, Plaintiff's MS symptoms made it painful for him to teach class, and he had to leave work early on the first day of classes of the Fall 2022 semester to take his prescribed pain medication. (*Id.* ¶ 26.) On August 30, 2022, Plaintiff emailed Ms. Vander Wielen a letter from his treating neurologist, Dr. Schindler, which explained that Plaintiff "was prone to develop symptoms which may temporarily impair his ability to work" and requested his excusal from work if those symptoms arose. (*Id.* ¶ 28.) The letter from Dr. Schindler does not list any symptoms that Plaintiff was experiencing, nor does it request that Plaintiff be allowed to work remotely. (*Id.* ¶¶ 29–31.) Plaintiff also requested in the email a "disability claim form or whatever is needed to initiate a claim so I can start the process if my condition gets worse." (*Id.* ¶ 27.) The next day, August 31, 2022, Plaintiff emailed Dr. Smith stating that he would be "out sick today and the rest of the week." (*Id.* ¶ 32.) Plaintiff was struggling

[5] Dr. Smith and Ms. Vander Wielen worked together as part of the "accommodation team" for Plaintiff. (Ex. A ¶ 76.)

with pain and numbness in his feet at this time due to his MS, which he alleviated through a combination of Gabapentin and other pain medicines, as well as laying prone. (*Id.* ¶¶ 33–34.) Dr. Smith forwarded Plaintiff's email to Ms. Vander Wielen, who then sent Plaintiff forms to be completed to support his time off work, including a Family and Medical Leave Act ("FMLA") medical certification form. (*Id.* ¶¶ 32, 36.)

On or around September 4, 2022, in anticipation of Plaintiff's return to work the next day, the College provided Plaintiff with a conference room in the McMaster Center for him to teach his Criminology classes because the location was easier for Plaintiff to access. (*Id.* ¶ 37.) On September 8, 2022, Plaintiff met with Ms. Vander Wielen to discuss his needs for leave and accommodations. (*Id.* ¶ 40.) During the meeting, Plaintiff told Ms. Vander Wielen he needed accommodations and provided her with his FMLA form ("FMLA Form 1") completed by Dr. Peter Boutros Edde, a physician at Penn Medicine. (*Id.* ¶ 41.) Dr. Edde requested on FMLA Form 1 that Plaintiff be allowed to teach one to two classes in person and to "conduct the rest of the classes virtually from home if possible." (*Id.* ¶ 45.) Dr. Edde also stated on FMLA Form 1 that Plaintiff "was only able to perform 'in classroom' teaching for no more than 3 hrs each day," five days per week. (*Id.* ¶ 46.) He also stated that Plaintiff's "current symptoms prevent him from standing or walking any longer than 3 hours during each work day" and that his "flareups will be unable to predict." (*Id.*)

After Plaintiff gave Ms. Vander Wielen the form, she began to tell Plaintiff that she may need more information, but Plaintiff said he would not be providing any additional information, stating that the College "needed to do what it had to do and he would do what he had to do." (*Id.* ¶ 42.) Ms. Vander Wielen tried to tell Plaintiff that she would need time to review the form, but Plaintiff cut her off and said that he was fifty-three years old and he could say what he wanted. (*Id.*

¶ 43.) Ms. Vander Wielen explained to Plaintiff that she would reach out to Dr. Edde's office to clarify information in the FMLA Form 1 and that she would need a separate form from Dr. Schindler as well. (*Id.* ¶ 44.)

Although Plaintiff and Ms. Vander Wielen discussed different workplace accommodations at the meeting, such as wearing different shoes while on campus, sitting while lecturing, and using a golf cart to move around campus, Plaintiff stated that the only accommodation he wanted was to work remotely from home. (*Id.* ¶ 47.) Plaintiff also stated that the golf cart accommodation was "invalid" because his pain medication made him unable to operate it, although it would be a reasonable and helpful accommodation for his feet symptoms, which occurred daily. (*Id.* ¶¶ 47–48.) Ms. Vander Wielen's understanding at this time was that Plaintiff's medication made him fall asleep and thus would put him out of work on days when he had to take it, but that he could work on campus on the days he did not have to take his pain medication. (*Id.* ¶ 51.) Ms. Vander Wielen and Plaintiff also discussed potential changes to Plaintiff's classroom, including its location, as accommodations. (*Id.* ¶ 52.)

On September 12, 2022, Plaintiff emailed Dr. Smith to let him know that he dismissed class and was going home sick. (*Id.* ¶ 54.) Later that evening, Plaintiff emailed Dr. Smith and Ms. Vander Wielen stating that he would "need to be out sick under FMLA" for an undetermined amount of time, but that he was scheduled for a doctor's appointment on September 23, 2022, and hoped to be "reevaluated at that time." (*Id.* ¶¶ 54–55.) The next day, September 13, 2022, Dr. Smith followed up with Plaintiff to try to figure out how to cover Plaintiff's classes and office hours while he was absent, since Plaintiff was not seeking a long-term substitute at that point. (*Id.* ¶ 57.) Plaintiff responded to Dr. Smith to let him know that he "had a conversation with [Ms. Vander Wielen] concerning Reasonable Accommodations including teaching virtually during [his]

disability flare-ups," but explained that the conversations broke down into a "battle of who knows more about the law and FMLA" and he refused to "submit to this knowledge-challenge or verbal exchange any longer." (*Id.* ¶ 58.) The next day, September 14, 2022, Ms. Vander Wielen responded to Plaintiff to let him know that she still needed to clarify a few items in his FMLA paperwork, and that Plaintiff did not sign the release form that was included with the other previously provided paperwork. (*Id.* ¶ 59.) Plaintiff responded that he was "not obligated to sign a medical records release," to which Ms. Vander Wielen responded that she was only requesting medical records that applied to his request for FMLA and ADA accommodations. (*Id.* ¶ 60.) Plaintiff responded to Ms. Vander Wielen, "No. You already have complete and detailed physician letters and medical section of the FMLA," to which Ms. Vander Wielen reiterated that she needed the release form signed so that she could contact his physician to clarify ambiguities within the documentation provided. (*Id.*) Plaintiff provided the medical authorization form to Ms. Vander Wielen on September 16, 2022 and indicated on the form that he did not authorize release of his medical records unrelated to the FMLA. (ECF No. 34-8 at 414–15.)

On September 19, 2022, Ms. Vander Wielen canvassed the College's campus to seek alternative accommodations for Plaintiff, including a classroom and office near the parking lot. (ECF No. 34-4 ¶ 62.) She documented this effort through photos. (*Id.*) Also on September 19, 2022, Ms. Vander Wielen emailed Plaintiff to let him know she was in receipt of the release form and would be contacting Dr. Edde regarding the incomplete sections of the form, to verify his name was spelled correctly, and to clarify the frequency of the intermittent leave Plaintiff would need to take. (*Id.* ¶ 63.) On September 21, 2022, Ms. Vander Wielen provided Plaintiff with a notice of eligibility for FMLA leave pending the clarification of the foregoing information with Dr. Edde on or before September 30, 2022. (*Id.* ¶ 68.) Ms. Vander Wielen also let Plaintiff know

that she would apply FMLA to his absences from the end of August through September 23, 2022, but she would still need Plaintiff to clarify the type and length of leave that he needed. (*Id.* ¶ 69.) Ms. Vander Wielen spoke with Dr. Edde's office on September 22, 2022, and received the answers to her questions regarding the ambiguities on the form. (*Id.* ¶ 70.) Ms. Vander Wielen was also told that Dr. Schindler would be directing Plaintiff's care moving forward. (*Id.* ¶ 71.)

On September 23, 2022, Ms. Vander Wielen asked Plaintiff when he would be released to return to work, informed him that his new classroom and office had no stairs, and offered a desk and chair for him to sit at or put his feet up, as needed. (*Id.* ¶ 72.) The same day, at Plaintiff's appointment with Dr. Schindler, the doctor noted that he worried that Plaintiff "may have a more progressive or aggressive phenotype [of MS] given his age and spinal cord involvement with little evidence for a definite remission. We discussed how stress can make MS symptoms worse and that we agree that work place accommodations should be in place to minimize stress." (*Id.* ¶ 74.)

On September 24, 2022, Plaintiff emailed Ms. Vander Wielen to let her know that his disability had worsened and that he was "in no condition to report [to work] next week." (*Id.* ¶ 75.) Plaintiff also let Ms. Vander Wielen know that he had obtained legal counsel because he had "been unsuccessful in working out reasonable accommodations." (*Id.* ¶ 75.)

On September 26, 2022, Ms. Vander Wielen received an FMLA certification form completed by Dr. Schindler ("FMLA Form 2"). (*Id.* ¶ 77.) FMLA Form 2 described Plaintiff's condition as lifelong and incurable with an approximate date of commencement of June 2022. (*Id.* ¶ 78.) Dr. Schindler also explained in the FMLA Form 2 that Plaintiff would be incapacitated for a continuous period from September 12, 2022 to December 12, 2022. (*Id.* ¶ 81.) On September 27, 2022, Ms. Vander Wielen emailed Plaintiff the long- and short-term disability claim forms, as well

as the College's FMLA response letter granting Plaintiff's FMLA leave request for a continuous leave period from September 12, 2022 to December 12, 2022. (*Id.* ¶ 82.)

On October 4, 2022, while Plaintiff was out on FMLA leave, counsel for Plaintiff emailed a demand letter to Ms. Vander Wielen.[6] (*Id.* ¶ 83.) On November 15, 2022, Ms. Vander Wielen emailed Plaintiff instructions to renew his medical clearances to return to work on December 12, 2022, as planned. (*Id.* ¶ 84.) Plaintiff emailed Ms. Vander Wielen and Dr. Smith on November 17, 2022 with a doctor's note signed by Dr. Schindler informing them of his intent and ability to return to work on November 21, 2022 if he received the "needed accommodations." (*Id.* ¶ 85.) Plaintiff testified that his symptoms had not improved at that time as compared to September 2022, when he went out on FMLA leave. (*Id.* ¶ 87.) Ms. Vander Wielen testified that the letter from Dr. Schindler that Plaintiff attached to his November 17, 2022 email did not provide her with enough information to determine whether Plaintiff could return to work. (*Id.* ¶ 88.) The note states that Plaintiff was "prone to develop symptoms which may temporarily impact his ability to work. We ask for him to be able to work remotely or be excused from work if these symptoms arise." (*Id.* ¶ 90.)

Plaintiff's ability to teach, either on campus or virtually, was impacted by the unpredictable and varying degrees of flareups he experienced. (*Id.* ¶¶ 95–105.) Plaintiff testified that if he had an "extreme" flareup while on campus, he would have to leave campus to go home because he would have to take his medication that would make him "very sleepy." (*Id.* ¶¶ 95–96.) If he suffered from a "moderate" flareup while on campus he would likely be able to finish where he

[6] While Plaintiff is currently represented by J. Stephen Woodside, this letter was sent by the Law Offices of Eric A. Shore, which previously represented Plaintiff. (ECF No. 34-9 at 462.) For the avoidance of confusion, the Court refers to members of the Eric A. Shore law firm as Plaintiff's counsel in this opinion, as they represented him at the relevant time.

was in the lesson then go home to take his medication. (*Id.*) Plaintiff also testified that during a minor flareup he would not take his sleep-inducing pain medication "all the time," but he would need to teach remotely from home depending on the area of his body experiencing the flareup, such as his feet, so that he could teach lying down from his bed or couch. (*Id.* ¶¶ 100–03.) Plaintiff testified that teaching remotely from home would have alleviated a flareup of headache symptoms as well, because he could not control the lighting or noise levels on campus. (*Id.* ¶ 105.)[7] Plaintiff also testified that while on campus it was "hard to convey to [students] that you're unavailable" and that if he worked remotely from home he could post work "where the students could do it at a later time." (*Id.*)

Although Dr. Smith and Ms. Vander Wielen discussed the possibility of a virtual classroom in September and October 2022, and, as of September 8, 2022, the College had virtual classroom capabilities that Plaintiff could have used, the College did not make a decision regarding whether to provide a virtual classroom to Plaintiff. (Ex. A ¶ 100; ECF No. 42-1 ¶ 150.)[8]

On November 18, 2022, the College sent Plaintiff a letter, undersigned by Ms. Vander Wielen, delaying his requested November 21, 2022 return, providing him with paid leave until November 29, 2022, and requesting information regarding his condition and current status, including the job functions he could and could not complete, all possible accommodations that would allow him to perform the essential functions of his job, and whether performing work from home would allow him to teach with a full course load. (*Id.* ¶ 107.) While Defendant asserts that Plaintiff never responded to the November 18, 2022 letter, Plaintiff argues that Defendant already

[7] Plaintiff did not respond to this fact in his Response to Defendant's Statement of Undisputed Material Facts, but the transcript section Defendant cites to supports that Defendant accurately recounted Plaintiff's testimony. (*See* ECF No. 34-11 at 181–82.)
[8] Defendant asserts that it did not make a decision because Plaintiff failed to meaningfully engage in the interactive process. (ECF No. 42-1 ¶ 150.)

had the answers to its questions, as reflected in the two FMLA forms and Dr. Schindler's August 30, 2022 and November 16, 2022 notes. (*Id.* ¶ 114; Ex. C ¶ 114).[9]

On November 28, 2022, Plaintiff, through his attorneys, emailed the College's attorneys requesting accommodations to return to work, including requests that he perform faculty duties virtually during flareups but otherwise perform his duties in person, have his assigned classes run on a concurrent schedule to limit the amount of hours on his feet, and retain the more easily accessible parking space and classroom space previously assigned to him. (Ex. C ¶ 115; ECF No. 34-8 at 474.) Plaintiff also requested intermittent FMLA leave in the event of a debilitative flareup in the email. (*Id.*)

On November 29, 2022, Plaintiff's counsel sent the College's counsel an email with an updated medical certification from Dr. Schindler and a series of redacted medical records from before Plaintiff went out on extended FMLA leave. (ECF No. 34-4 ¶ 118.) The College responded to the medical certification on December 6, 2022 and requested that Plaintiff execute a new HIPAA authorization for the College to obtain information regarding his condition because Plaintiff's earlier release was no longer valid, but Plaintiff asserts that he never saw this letter or the HIPAA form, which were addressed to his counsel at the time. (*Id.* ¶ 120; Ex. C ¶¶ 79, 120–21.) Plaintiff did not provide the College with a new health authorization. (ECF No. 34-4 ¶ 123.) Plaintiff did not return to work after his FMLA leave ended. (Ex. A ¶ 134.)

On December 20, 2022 Plaintiff's former counsel sent a letter to the College's counsel accusing the College of engaging "in a fishing expedition by requesting access to Mr. Davis's

---

[9] While Plaintiff's Response to Defendant's Statement of Undisputed Material Facts also asserts that the College already had the answers to its questions based on medical records from Dr. Schindler (Ex. C ¶ 114), the referenced records are dated November 29, 2022, *after* the November 18, 2022 letter. (*See* ECF No. 34-8 at 476–80).

medical records." (*Id.* ¶ 124.) The letter also enclosed an Equal Employment Opportunity Commission ("EEOC") Charging Complaint filed on behalf of Plaintiff dated December 16, 2022. (*Id.*)

In late December 2022, Plaintiff received notice of his qualification for long-term disability through the College's provider, Unum. (*Id.* ¶ 125.) Plaintiff did not participate in the disability hearing, but testified during his deposition that he received long-term disability because he "couldn't perform substantial duties due to disability." (*Id.*)

Defendant asserts that Plaintiff was terminated by the College on or before April 12, 2024, after he abandoned all communications and failed to sign a new one-year contract with the College. (ECF No. 34-4 ¶ 131.) However, Plaintiff disputes this fact because he asserts that he concluded that he was terminated "after he received the November 18, 2022 letter and the College refused to allow him to work after the FMLA expired and the College refused to accommodations." (Ex. C ¶¶ 121, 131.) Defendant was notified that Plaintiff applied for unemployment benefits through the Commonwealth of Pennsylvania sometime between December 20, 2022 and January 19, 2023. (ECF No. 34-4 ¶ 126; ECF No. 34-8 at 493.)

### B. Procedural History

Plaintiff filed a charge of discrimination with the EEOC on December 16, 2022 and received his notice of right to sue from the EEOC on March 14, 2023. (ECF No. 34-8 at 487–89.)[10] On May 25, 2023, Plaintiff filed his Complaint in this Court against Defendant, alleging one count of disability discrimination under the ADA. (*See generally* ECF No. 1.) Defendant filed a motion to dismiss (ECF No. 4), which this Court denied on May 17, 2024. (ECF No. 19). Defendant filed

[10] Plaintiff has not put forth evidence of receipt of his right to sue from the EEOC, but the Defendant has not challenged that Plaintiff received it.

its motion for summary judgment on September 6, 2025. (ECF No. 34.) The motion is fully briefed. (ECF Nos. 41, 42.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden of the moving party may be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

The ADA prohibits employers from discriminating against disabled employees. *See* 42 U.S.C. § 12112. ADA disability discrimination claims without direct evidence of discrimination

are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas*. *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 434 (E.D. Pa. 2015). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of disability discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). It is then the plaintiff's burden to demonstrate that the employer's stated reason is pretextual. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

To plead a prima facie case of disability discrimination under the ADA, a plaintiff must show that he is "(1) disabled within the meaning of the ADA, (2) can perform the essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of discrimination based on his disability." *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)).

Plaintiff sets forth two theories of discrimination under the ADA: (1) adverse employment action and (2) failure to accommodate. The distinction for a failure to accommodate claim under the ADA is that the third element of a prima facie case, an adverse employment action, "can be satisfied by a showing either that the employer (1) refused to provide a proposed reasonable accommodation, or (2) failed to engage in an interactive process after a request for accommodation was made, though a reasonable accommodation was possible." *Lucas v. City of Phila.*, No. 11-4376, 2013 WL 2156007, at *26 (E.D. Pa. May 17, 2023) (citing *Solomon v. Sch. Dist. of Phila.*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012), *aff'd*, 532 F. App'x 154 (3d Cir. 2013)). The Court addresses each of Plaintiff's theories of discrimination in turn.

**A. Adverse Employment Action**

Defendant does not dispute that Plaintiff meets the first element of a prima facie case of disability discrimination and is disabled within the meaning of the ADA. (ECF No. 34-5 at 4.) Rather, Defendant disputes (1) that Plaintiff could perform the essential functions of his job with or without reasonable accommodation and (2) that he suffered an adverse employment action as a result of discrimination based on his disability. (*Id.* at 12–14, 24–25.)

To demonstrate that a plaintiff is a "qualified individual" under the ADA and therefore satisfies the second element of a prima facie disability discrimination case, the Third Circuit uses a two-part test. First, the "plaintiff must satisfy the prerequisites for the position, such as possessing the appropriate educational background, employment, skills, licenses, etc." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) (citation modified). Second, "the plaintiff must be able to perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* In determining "essential functions" of the job, the ADA provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Plaintiff bears the burden to show that he is qualified to perform the essential functions of his job with accommodations. *Taylor*, 184 F.3d at 320.

While Defendant concedes that Plaintiff met the prerequisites of an Associate Professor of Criminal Justice at the time of hire, Defendant asserts that Plaintiff could not perform the essential functions of the position following his MS diagnosis, even with reasonable accommodations in place. (ECF No. 34-5 at 4–5, 11.) Plaintiff asserts that Defendant has proffered new and pretextual

"essential job functions," and that he was able to perform all of the essential functions with his requested accommodation of virtual teaching. (ECF No. 41 at 8–9.)

The Court finds that there exists a genuine and material dispute as to whether or not Plaintiff could perform the essential functions of the position of Associate Professor of Criminal Justice following his MS diagnosis. First and foremost, the parties dispute what the "essential functions" are of the Associate Professor of Criminal Justice role. "The inquiry into whether the job requirement is essential to one's job is a 'factual determination that must be made on a case by case basis [based upon] all relevant evidence.'" *Conneen v. MBNA Am. Bank, NA.*, 334 F.3d 318, 326 (3d Cir. 2003) (internal quotations omitted) (alteration and emphasis in original). Such evidence includes, "the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). "The actual work experience of incumbents in the position, including the plaintiff if applicable, is also probative" of whether a function is essential. *Sturm v. UAL Corp.*, No. CIV. A. 98-264, 2000 WL 1300396, at *5 (D.N.J. Sept. 5, 2000). The employer bears the burden of establishing the essential functions of the job. *Id.*

Here, the parties cite to three main pieces of evidence in support of the "essential duties" of Plaintiff's position: (1) the May 2008 job description for the Associate Professor position, (2) Dr. Smith's affidavit, and (3) Plaintiff's declaration. (ECF No. 34-5 at 12–13; ECF No. 34-8 at 96–97; ECF No. 34-18; ECF No. 41 at 7–10; Ex. B.) The Court notes that, although Plaintiff asserts that the essential job functions that Dr. Smith lists in his affidavit are "pretext," the Court may consider them as part of the employer's judgment as to which functions are essential. 42 U.S.C. § 12111(8).

The parties agree that standing and sitting were not essential functions of Plaintiff's job, while teaching a full course load throughout Fall of 2022, meeting with cadets, and preparing course materials and instructions were essential functions of his job. (Ex. A ¶¶ 21–26.) The main material disputes are whether live, in-person teaching was an "essential function" of Plaintiff's job, and whether virtual teaching, in both non-live and live formats, provided an adequate substitute to live, in-person teaching. (ECF No. 34-4 ¶¶ 110–13; Ex. C at 73–74.)

The written job description for Plaintiff's position, which is dated May 29, 2008, does not address the issue of live versus virtual classroom instruction. (ECF No. 34-8 at 96–97.) It stands to reason that virtual instruction may not have been an option at this point in time, which was long before the COVID-19 pandemic made the virtual classroom commonplace. Dr. Smith's affidavit, dated September 5, 2025, on the other hand, states that "Plaintiff was required to be on campus" and "teach the Cadets through live classroom instruction" as "essential function[s] of his job." (ECF No. 34-18 ¶¶ 4, 8.) Dr. Smith also asserts that Plaintiff "was required to be on campus to teach fifteen (15) hours of course work a week . . . and hold four (4) hours of office hours a week for Cadets." (*Id.* ¶ 6.) Further, Dr. Smith asserts that prerecorded videos did not provide an adequate substitute for live class instruction. (*Id.* ¶¶ 13–16.)

Plaintiff, on the other hand, argues that the College had virtual classroom technological capabilities set up, and that these capabilities were utilized during the COVID-19 pandemic and also during inclement weather. (ECF No. 41 at 16–17; ECF No. 42-1 ¶ 123.)[11] Plaintiff also asserts that in his experience as a professor at the College for over five years, "[a] non-live pedagogy in combination with live methodologies was a common practice used by all Professors including Dr.

[11] Although the College asserts that these policies were not material to the relevant time of academic year 2022–2023, it fails to cite specifically to what the relevant virtual learning policies were at that time. (ECF No. 42-1 ¶ 123.)

Smith while teaching classes facilitated through the online learning portal where coursework and assignments were given pre-Covid and post-Covid." (Ex. B ¶ 3.) Given the conflicting evidence set forth by the parties, the Court finds that the factual question of what the "essential functions" of Plaintiff's job were must be decided by a jury.[12] Without knowing what the essential functions of Plaintiff's job were, the Court declines to analyze whether Plaintiff could perform them with or without reasonable accommodations.

Finding that Plaintiff has raised a genuine dispute of material fact as to the essential duties of his job and therefore whether he could perform them, the Court turns to whether he suffered an adverse employment action. Putting aside Plaintiff's assertion that Defendant's failure to accommodate constituted an adverse employment action, addressed *infra*, the Court addresses whether Plaintiff faced any other adverse employment actions that could serve as the basis for his discrimination claim under the ADA. Although Defendant addresses the adequacy of Plaintiff's employment discrimination claim based on an adverse employment decision theory (ECF No. 34-5 at 23–25), Plaintiff's brief does not address these arguments and appears to abandon any disability discrimination claim based on an adverse employment decision other than failure to accommodate.[13] Instead, Plaintiff proceeds on the theory that he can make a prima facie case based

---

[12] Aside from teaching live, in-person classes, Defendant repeatedly asserts that "[b]eing awake was an essential function of Plaintiff's position" and that was not possible due to the sleep-inducing medication that Plaintiff took to treat his unpredictable flareups. (ECF No. 34-5 at 13–14.) However, Plaintiff asserts that even if he "had a flareup of symptoms, he could fully teach remotely." (Ex. C ¶ 93.) Therefore, it remains disputed as to whether or not Plaintiff was able to perform the essential functions of his job with accommodations when he had to take his medication.

[13] Plaintiff disputes Defendant's assertion that he was terminated on or around April 12, 2024. (*See* ECF No. 34-4 ¶ 131; Ex. C ¶ 131.) He contends that he concluded that he was terminated "after he received the November 18, 2022 letter and the College refused to allow him to work after the FMLA expired and the College refused to accommodations." (Ex. C ¶ 121, 131.) However, Plaintiff's Opposition fails to respond to any of Defendant's arguments regarding constructive discharge. (*See* ECF No. 34-5 at 24.) Additionally, although this fact is included in Plaintiff's

on the alleged facts that: (1) the College failed to engage him in the reasonable accommodation process in good faith and (2) that the College further failed to engage in the interactive process when Plaintiff attempted to return to work in November 2022. (*See* ECF No. 41 at 10, 19.) As such, the Court will deem the discrimination claim based on any adverse employment actions other than the failure to accommodate abandoned. *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) ("[W]hen a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of these issues." (citation modified)).

**B. Failure to Accommodate**

Turning to Plaintiff's failure to accommodate theory, the Court incorporates the above analysis as to the first two elements of the prima facie case of disability discrimination under the ADA. Thus, the Court finds that (1) there is no dispute that Plaintiff is disabled within the meaning of the ADA and (2) Plaintiff has demonstrated a genuine dispute of material fact as to what the essential functions of his job were and whether he could perform them. Turning to the third and final element of a prima facie disability discrimination case, the Court looks to whether the Plaintiff suffered an adverse employment action as it relates to his request for reasonable accommodations. Such adverse employment actions "include refusing to make reasonable accommodations for plaintiff's disability," where such "reasonable accommodations" include the "employer's reasonable efforts to assist the employee and to communicate with the employee in good faith . . . in the interactive process." *Solomon v. Sch. Dist. of Phila.*, 882 F. Supp. 2d 766, 778–79 (E.D. Pa.

---

affidavit, Plaintiff does not argue anywhere in his Opposition that the College's decision not to give the Director of Assessment position to him constituted an adverse action upon which he bases his discrimination claim. (Ex. C ¶¶ 15–22.)

2012). The duty to engage in the interactive process is triggered once the plaintiff requests a reasonable accommodation. *Id.*

To make out the third element of a prima facie case, a plaintiff must show that "her employer (i) refused to provide her with a proposed reasonable accommodation, or (ii) failed to engage in an interactive process after she requested an accommodation, though a reasonable accommodation was possible." *Id.* Both inquiries hinge on the existence of a "reasonable accommodation." The burden then shifts to the employer to "show that the proposed accommodation was not reasonable or would have caused it undue hardship, or that the employer proposed a reasonable accommodation that the plaintiff rejected." *Id.* at 779.

The parties do not dispute that Plaintiff requested reasonable accommodations beginning on August 28, 2022 due to his MS, thus triggering the interactive process. (ECF No. 34-4 ¶¶ 23–24.) The parties do dispute the reasonableness of the accommodations that Plaintiff requested—namely, the virtual classroom. As discussed, *supra*, there exists a genuine dispute of material fact as to the reasonableness of the virtual classroom. Turning to whether the College denied that reasonable accommodation, Plaintiff asserts that the College failed to provide him with a virtual classroom. (ECF No. 41 at 15.) Although Defendant contends that "the College never denied Plaintiff any reasonable accommodations, including his preferred accommodation, [a virtual classroom]" (ECF No. 34-5 at 14), Plaintiff's proffered evidence shows that neither Ms. Vander Wielen nor Dr. Smith communicated to Plaintiff in 2022 that he would be offered a virtual classroom as a reasonable accommodation. (ECF No. 34-9 at 85; ECF No. 34-10 at 44.) Thus, Plaintiff has successfully demonstrated a prima facie case for failure to accommodate based on the College's refusal to provide him with his proposed reasonable accommodation.

Turning to Plaintiff's theory that Defendant failed to engage in the interactive process, the Court finds that Plaintiff has at least raised a genuine dispute that Defendant failed to engage in the interactive process. Although Defendant asserts that "Plaintiff obstructed and delayed the interactive process by refusing to provide adequate authorizations, certifications, and information that Vander Wielen needed to adequately evaluate the proper accommodations" (ECF No. 34-5 at 22–23), a jury could find that Defendant also acted in bad faith by failing to fully consider the virtual classroom as an option, even though this accommodation was explicitly requested by Plaintiff's physician, Dr. Schindler. (ECF No. 34-4 ¶ 90.) A jury could also find that Defendant repeatedly asked Plaintiff for medical information that it already had as a way to sandbag Plaintiff's reasonable accommodations request. (*See, e.g.*, Ex. C ¶ 114.) Conversely, the evidence does demonstrate instances where Plaintiff was uncooperative in the interactive process. For example, Plaintiff only signed the medical authorization as it related to his FMLA request and not his ADA accommodations request, and Plaintiff also stated in the September 8, 2022 meeting with Ms. Vander Wielen that he would not be providing her with additional information concerning his condition. However, Plaintiff did provide Defendant with pertinent medical information and records from Doctors Edde and Schindler. Because there is evidence upon which a jury could conclude the Defendant acted in bad faith in the interactive process, the Court finds that there exists a genuine dispute.

Finding that Plaintiff has at least shown a genuine dispute of material fact exists as to each prima facie element of his failure to accommodate claim, the burden now shifts to Defendant to "show that the proposed accommodation was not reasonable or would have caused it undue hardship, or that the employer proposed a reasonable accommodation that the plaintiff rejected." *Solomon v. Sch. Dist. of Phila.*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012). Defendant argues that

Plaintiff's insistence on remote teaching "was unreasonable given the unique nature of the College's operations (a military junior college and boarding school), the problems the College experienced in a remote setting during COVID . . . , and the complaints from students about an online teaching environment and cancelled classes." (ECF No. 34-5 at 23.) However, the evidence that Defendant cites does not support these statements. (*See* ECF No. 34-8 at 135, 495.) First, the document Defendant cites in support of the statement that the College experienced problems in a remote setting during COVID-19 simply shows the College's health and safety plan for the Fall of 2020. (*Id.* at 495.) It does not shed light on any problems the College experienced in the remote setting during COVID-19. Second, the document allegedly containing complaints from students about an online teaching environment is a classroom observation form for the spring 2022 semester completed by Dr. Smith that shows certain students in Plaintiff's classes felt disconnected from Plaintiff. (ECF No. 135.) Dr. Smith posited this lack of connection was because Plaintiff had to cancel several classes. (*Id.*) The form does not, however, detail any student complaints regarding the online teaching environment.

Defendant's reference to *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999) does not change this result. *Taylor* instructs that, "[i]f an employee insists on a single accommodation that is unreasonable as a matter of law, then the employee will be at fault for the breakdown in the interactive process." 184 F.3d at 316 n.7. However, Defendant has not shown that Plaintiff's request for a virtual classroom was "unreasonable as a matter of law." Rather, the adequacy of virtual teaching is a factual dispute that is appropriate for a jury to decide, as discussed *supra*. Therefore, Defendant has not met its burden to show that Plaintiff's disability discrimination claim based on a failure to accommodate fails as a matter of law.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff has raised a genuine issue of material fact regarding whether he can meet his evidentiary burden to establish disability discrimination under the ADA for failure to accommodate. Plaintiff has waived any claim for disability discrimination under an alternative adverse employment action theory. Consequently, Defendant's Motion for Summary Judgment is denied as to Plaintiff's failure to accommodate theory of disability discrimination and granted as to Plaintiff's adverse employment action theory. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**